```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       LAREDO DIVISION

SOMERO ENTERPRISES, INC.          §
                                  §
          Plaintiff,              §
VS.                               §
                                  §   CIVIL ACTION NO. L-07-134
JOSE FRANCISCO CESAR              §
MADERO-GAMEZ, et al,              §
                                  §
          Defendants.             §
```

## MEMORANDUM AND ORDER

Pending are cross motions for summary judgment between Plaintiff Somero Enterprises, Inc., and Defendants Jose Francisco Cesar Madero-Gamez and Potencia Hidrostatica, S.A. de C.V. ("Madero") (Dkt. 32.) (Dkt Nos. 29, 32.) Somero's motion (Dkt. 29) includes a Rule 12 motion to dismiss some of Madero's counterclaims. Also pending is Madero's motion (Dkt. 41) to supplement his motion for summary judgment.

## I. BACKGROUND

From 1992 until October, 2004, and again for a brief time in 2006, Madero marketed Somero's products in Mexico, Central America, South America, and the Caribbean. (See Dkt. 41-2, Sales Spreadsheet; Dkt. 40-1, 2nd Madero Aff. 2.) On April 15, 2000, the parties' entered an "Independent Services Agreement." ("ISA"). (Dkt. 29-1, ISA.) Madero's engagement as Somero's sales representative seems to have been interrupted in October,

2004, although Madero's company, Hidrostatica, continued to buy Somero's machines wholesale. (See 41-2, Sales Spreadsheet; 2nd Madero Aff. 2; Dkt. 29-6, Budget Payments Summary.) It appears Madero again briefly served as Somero's sales representative in the Spring and Summer of 2006, although the parties did not execute a new formal written agreement. (Sales Spreadsheet; Dkt. 41-3, Paul Email of Feb. 12, 2006; Dkt. 39-3, Hohmann Email of June 26, 2006.) Somero sent a letter terminating the business relationship on July 28, 2006. (Dkt. 29-10, Hohmman Letter of July 28, 2006.) Somero filed this suit on October 2, 2007. (Dkt. 1-3, Pl. Original Petition.)

Each party has submitted summaries of Somero's records showing some of Madero's sales from 1999 to 2006, and showing Somero's payments to Madero from 2000 until 2006. For most of the sales, Somero's records credit Madero with a commission, but for only a handful of these sales did Somero actually pay the commission. (Dkt. Nos. 29-4, 29-5, Credited Commissions Summaries; Dkt. 29-7, Paid Commissions Summary.) From April 13, 2000, to October, 2004, Somero made nearly monthly payments to Madero under the terms of the ISA calling for Somero to pay Madero a "maximum reimbursement budget." (ISA 3, Budget Payments Summary.) It appears that Madero's credited commissions were significantly less than the $655,000 in budget

payments made to Madero. Somero seeks to recover the shortfall under Section 4(a)(ii) of the ISA:

> Somero shall provide [Madero] a maximum reimbursement budget of Twenty Thousand and 00/100 U.S. dollars (U.S. $20,000.00). Such amount will be adjusted with the commissions that Somero has to pay to [Madero] under Section 4(a)(i) above. The reimbursement budget set forth under this Section will only be provided when this Agreement is executed and when such amount may no longer be adjusted with the commissions due to [Madero].

(ISA 3; Dkt. 29, Pl. MSJ ¶¶ 47-53.) Madero agrees that this section permitted Somero to withhold credited commissions up to the amount of that shortfall. (Dkt. 31-1, 1st Madero Aff. 3-4; Dkt. 31, Def. Resp. & MSJ 7.) However, Madero maintains that regardless of any shortfall, the "reimbursement budget" effectively guaranteed that he would receive a minimum of $20,000 each month for his services. The parties also dispute several other aspects of their agreement:

(1) whether Somero's interpretation of Section 4(a)(ii) would make the ISA an installment contract such that the statute of limitations for Madero's failure to repay the shortfall began to run at the end of each month;

(2) whether Somero breached the ISA by reducing the budget payments in 2002 and 2003;

(3) whether Puerto Rico and the Dominican Republic were excluded from Madero's sales territory, which the ISA limited to Mexico, South America, and Central America;

(4) whether the ISA terminated in October, 2004, August, 2006, or April, 2007;

(5) whether the parties briefly formed another contract in 2006.

## II. DISCUSSION

A. Somero's Motion to Dismiss.

Somero moves to dismiss some of Madero's counterclaims under Rule 12(b)(6), Fed. R. Civ. P. (Dkt. 29, Pl. MSJ ¶¶ 34-36.) Somero asserts that Madero's pleading is inadequate under the Rule 8 requirement that a claimant briefly state the grounds of his claims. Somero invokes Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in which the Supreme Court held that Rule 8 requires claimants to give fair notice of factual circumstances that they plausibly believe support their claims. Id. at 556. Madero's counterclaims are stated in a single conclusory sentence listing several causes of action. (Dkt. 30 at ¶ 22; Dkt. 50 at ¶ 20.)[1] However, other paragraphs of his answer contain the factual allegations he believes support his counterclaims. (Compare Dkt. 30 at ¶¶ 14-20, and Dkt. 50 at ¶¶ 12, 16; with Dkt. 31-1, 1st Madero Aff., and Dkt. 40-1, 2nd Madero Aff.). Madero was deposed on February 6, 2009, and he has submitted two affidavits setting forth his account of the parties' dealings. (Dkt. Nos. 29-8, 31-3, Madero Dep.; Dkt. 29-13, Ramos Aff.; 1st Madero Aff.; 2nd Madero Aff.) Somero has

---

[1] The Court notes that Somero states several of its claims and defenses in a similarly unhelpful fashion. (Dkt. 28 at ¶¶ 28-29; Dkt. 52 at ¶ 2).

had ample opportunity to discover Madero's view of the facts; the motion to dismiss is denied. However, both parties have plead a number of duplicative or plainly inapplicable claims and defenses. For reasons given below, the Court will dismiss a number of them on its own motion.

B. The Parties' Summary Judgment Motions

Both motions ask for a favorable summary judgment on all of the claims and counterclaims in the suit. (See Pl. MSJ ¶¶ 12; Def. Resp. & MSJ ¶ 28.) Yet neither party's motion gives more than cursory attention to any issues other than their respective obligations under the ISA, the effect of the statue of limitations, and the effect of the ISA's merger clause. Genuine disputes of material fact preclude summary judgment on those issue, although the record does establish certain matters for purposes of trial. See Fed.R.Civ.P. 56(d).

### IV. PARTIAL SUMMARY ADJUDICATION

A. Choice of Law

The ISA contains a New Hampshire choice-of-law clause. (ISA 7.) A federal court sitting in diversity must apply the substantive law of the forum state, including the state's choice-of-law rules. Erie Railroad v. Tompkins, 304 U.S. 64, 79 (1938); Klaxon v. Stentor Electric Co., 313 U.S. 487, 496 (1941). Texas's choice-of-law rules allow parties to select the

law to be applied to their contract. DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990); Resolution Trust Corp. v. Northpark Joint Venture, 958 F.2d 1313, 1318 (5th Cir. 1992). However, questions of procedure are governed by the laws of the state where the action is brought. California v. Copus, 309 S.W.2d 227, 230 (1958). While statutes of limitations are substantive for Erie purposes, Huss v. Gayden, 571 F.3d 442, 450 (5th Cir. 2009), they are procedural under Texas's choice-of-law rules. Baker Hughes, Inc. v. Keco R & D, Inc., 12 S.W.3d 1, 4 (Tex. 1999); Johansen v. E.I. Du Pont De Nemours & Co., 810 F.2d 1377, 1380-81 (5th Cir. 1987). The parties' breach of contract claims are therefore subject to Texas's four-year statute of limitations. Neither party has argued that a foreign state's law should apply to their other state-law claims.

B. Breach of Contract Claims.

The record establishes that the ISA was a valid contract entered on April 15, 2000.[2] However, Section 4(a)(ii) is ambiguous as to whether Madero had to repay the reimbursement budgets. It is ambiguous with respect to when, and how

---

[2] It is not clear when in 2000 Madero actually signed the document memorializing their agreement. However, that document unambiguously states that the ISA was "entered into as of this 15th day of April, 2000." (ISA 1.) There is no evidence that the parties intended the ISA to come into effect any later than that date.

frequently, the commissions and budgets were supposed to be "adjusted," and it is ambiguous as to whether, and by how much, Somero could reduce the budget payments. The jury will be allowed to consider evidence of the parties' prior course of dealing, their negotiations, their course of performance, and any subsequent communications that illuminate how they understood Section 4 at the time they agreed to its terms.

The ISA states that it will automatically renew on a yearly basis, but that it "may be terminated at any time by either party upon thirty (30) day's prior written notice to the other party." (Dkt. 29-1, ISA 4.) Under Texas law, if the initial contract was within the statute of frauds, then the statute of frauds bars enforcement of a mutual oral agreement to rescind the contract. Givens v. Dougherty, 671 S.W.2d 877, 878 (Tex. 1984). The record includes two emails Madero received from Somero executives in 2006: one was sent on February 12, 2006, by Chris Paul (Dkt. 41-3); the other was sent on June 26, 2006, by Howard Hohmann (Dkt. 39-3). The February 12 email is some evidence that the parties had agreed to abandon the ISA, and both emails constitute evidence that Somero offered Madero a new agreement in 2006. However, there is not enough evidence to resolve either question as a matter of law. The jury must decide whether the parties agreed to abandon the ISA, whether there was a new agreement. Determining whether there was a new

agreement will require deciding whether Somero made an offer to contract in either email, and whether Madero impliedly accepted the terms of that offer by his subsequent conduct. The jury will also decide the substance of any new agreement's terms, if they are not explicitly stated in the underlying email. Neither email is clear regarding sales in the Carribean. Both emails, however, contemplate Madero's agreeing to repay a substantial portion of the budget payments he received under the ISA. If the ISA had not been abandoned and a new agreement was formed, then the ISA would be terminated by the new agreement. Otherwise, the ISA was either abandoned after October, 2004, or was terminated on August 28, 2006, 30 days after Howard Hohmann sent the letter terminating the party's business relationship.

C. Other Claims

*1. Fraud and Estoppel Claims and the ISA's Merger Clause*

A written agreement containing a clause disclaiming reliance on other parties' representations can defeat the reasonable reliance element of an estoppel, fraud, or fraudulent inducement claim. See Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 179-81 (Tex. 1997); Armstrong v. American Home Shield Corp., 333 F.3d 566, 571 (5th Cir. 2003). A written disclaimer defeats reliance if "the contract and the circumstances surrounding its formation" show that the

disclaimer evinced a clear and unequivocal intent to disclaim reliance on specific representations. Schlumberger 959 S.W.2d at 179; see also Armstrong, 333 F.3d at 571. The ISA's merger clause states that it "supercedes any and all other agreements, either oral or written . . . with respect to the subject matter [of the ISA]." (ISA 7.) In Armstrong, the Fifth Circuit held that a similarly worded merger clause precluded a fraud claim based on representations made prior to execution of the contract. Armstrong, 333 F.3d at 571 (applying Texas law). There is no evidence that either party misunderstood or was in any way deceived regarding the meaning of the ISA's merger clause. Accordingly, neither party may advance a fraud or estoppel claim predicated on representations made prior to April 15, 2000.

*2. Unjust Enrichment Claims*

Unjust enrichment encompasses a number of equitable doctrines designed to prevent a party from retaining benefits conferred by another without compensation. A claim for "money had and received" arises when one party has been unjustly enriched by receiving money that in equity and good conscience

belong to another. Staats v. Miller, 150 Tex. 581, 243 S.W.2d 686, 687 (Tex. 1951).[3]

When a valid agreement addresses the parties' obligations on a particular matter, recovery under an equitable theory is generally precluded. Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000). The parties agree that the ISA controls whether Madero is obliged to repay a portion of the reimbursement budget payments. Therefore, interpretation of the ISA and resolution of a possible new agreement in 2006 will control whether Madero is obliged to repay money to Somero.

A claim for quantum meruit arises when a party refuses to pay another for valuable services rendered under circumstances giving reasonable notice that the provider expected to be paid. Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools 246 S.W.3d 42, 49 (Tex. 2008); Heldenfels Bros., Inc. v. City of Corpus Christopherti, 832 S.W.2d 39, 41 (Tex. 1992). If the recipient accepted the services, it is presumed that it had notice that payment was expected. See Peko Oil USA v. Evans, 800 S.W.2d 572, 578 (Tex.App. 1990); City of Galveston v. O'mara, 146 S.W.2d 416, 420-21 (Tex.Civ.App, 1940), aff'd 155 S.W.2d 912, 912 (Tex. 1941). The presumption can be rebutted by

---

[3] See also Hunt v. Baldwin, 68 S.W.3d 117, 132 (Tex.App. 2001); Amoco Prod. Co. v. Smith, 946 S.W.2d 162, 164 (Tex.App. 1997); Johnson v. MHSB Enterprises, L.L.C., No. 03-04-00153-CV, 2004 WL 2247411 (Tex.App.—Austin, October 7, 2004).

showing that the provider had an independent, strong self-interest in performing the services. Peko Oil, 800 S.W.2d at 578. There is some evidence that Madero provided services that were not covered by a contract, specifically that he secured some sales in the Caribbean and secured some sales in other locales after August, 2006. Madero has not, however, submitted evidence sufficient to prove the elements of a promissory estoppel or quantum meruit claim regarding these services.

The Texas Supreme Court has not addressed the statute of limitations for quantum meruit claims, but Texas's courts of appeal apply Section 16.004's four-year statute of limitations for recovery of a debt. Pepi Corp. v. Galliford, 254 S.W.3d 457, 461 (Tex.App. 2007)(collecting cases); see also Quigley v. Bennett, 256 S.W.3d 356, 361 (Tex.App. 2008). Texas's courts of appeal have also held that quantum meruit claims accrue at the time when payment for the services would be reasonably expected and the party who received the services fails to pay. Lamajak, Inc. v. Frazin, 230 S.W.3d 786, 796 (Tex.App. 2007); Thomason v. Freberg, 588 S.W.2d 821, 828 (Tex.Civ.App. 1979).

*3. Negligent Misrepresentation Claims*

Both parties plead negligent misrepresentation. A negligent misrepresentation claim requires showing that a party supplied false information without exercising reasonable care as

to its veracity. Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991); Johnson v. Baylor University, 188 S.W.3d 296, 303 (Tex.App. 2006). The information must concern "an existing fact rather than a promise of future conduct." Federal Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991). Both parties allege that the other misrepresented its intended actions, but there is no evidence that either was given false information regarding an existing state of affairs.

*4. Somero's Conversion Claim*

Somero has plead conversion, which is the wrongful exercise of dominion and control over another's property in denial of, or in a manner inconsistent with, his rights. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997). Somero offers no elaboration of either facts or law to support this theory, which seems entirely redundant with its other claims.

*5. Madero's Equitable Estoppel Counterclaim*

Madero has plead a claim for "equitable estoppels [sic]." (Dkt. 50 at ¶ 20.) Texas law provides no cause of action for equitable estoppel as distinct from promissory estoppel or fraud. E.g. Kelly v. Rio Grande Computerland Group, 128 S.W.3d 759, 769-70 (Tex.App. 2004); Watson v. Nortex Wholesale Nursery, Inc., 830 S.W.2d 747, 751 (Tex.App 1992); Crowder v. Tri-C Resources, Inc., 821 S.W.2d 393, 397 (Tex.App. 1991.).

*6. Somero's Laches Defense*

Somero has plead the defense of laches. Two essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them, and (2) a good faith change of position by another to his detriment because of the delay. <u>Rogers v. Ricane Enters., Inc.</u>, 772 S.W.2d 76, 80 (Tex. 1989). There is no evidence that Madero has unreasonably delayed asserting his rights, and Somero has made no effort to explain how this doctrine should apply to the facts of this case.

*7. Other Claims and Defenses*

Neither party gives more than cursory attention to Somero's trademark claim, and both parties' motions for summary judgment will be denied on this issue. The Court will defer consideration of the applicability of waiver, the discovery rule, and the doctrine of fraudulent concealment. The parties' motions for summary judgment on attorneys' fees and wrongful attachment and garnishment will be denied as premature.

## IV. CONCLUSION

Somero's motion for summary judgment and motion to dismiss (both in Dkt. 29) are DENIED. Madero's motion for summary judgment (Dkt. No. 32) is DENIED. Madero's motion (Dkt. 41) to supplement his motion for summary judgment is DENIED as moot.

For reasons stated above, the Court on its own motion DISMISSES the following:

> Madero's equitable estoppel counterclaim;
> Madero's negligent representation counterclaim;
> Somero's money-had-and-received claim;
> Somero's negligent misrepresentation claim;
> Somero's conversion claim; and
> Somero's laches defense.

At the motion hearing of March 10, 2010, the parties represented that they needed to conduct additional discovery before trial. The parties were ORDERED to jointly file a proposed amended scheduling order before noon on March 16, 2010. They did not do so. The scheduling order (Dkt. 24) is AMENDED to extend the discovery deadline to June 25, 2010. After that time, the parties are ORDERED to file a joint proposed pretrial order before July 16, 2010.

DONE at Laredo, TX, this 23rd day of March, 2010.

_____
George P. Kazen
Senior United States District Judge